This is a tort action wherein the surviving widow and minor son of David Solomon, deceased, sue to recover damages accruing to them on account of injuries and death of said Solomon, allegedly caused by the negligence and carelessness of the operator of defendant's passenger bus.
The deceased, it is alleged, was the guest passenger of his son, John David Solomon, in the son's light weight truck when it collided with defendant's bus on Highway No. 15, a short distance south of the boundary line between the Parishes of Franklin and Catahoula. The accident occurred at about nine o'clock A.M.
The Solomon truck was traveling southerly. The bus was going north. Due to heavy rains the night previous some two hundred yards of the highway just below the boundary line between the parishes was inundated to a depth of approximately nine inches. The collision occurred on the water-covered portion of the highway.
The Davis Bus Line, Inc., at time of the accident was in receivership. The receiver, John B. Snyder, and the American Fidelity and Casualty Company, carrier of the bus company's public liability insurance, were impleaded defendants.
Plaintiffs allege that after crossing the bridge that spans the stream between said *Page 817 
parishes, the truck's operator observed that the highway ahead was covered with water; that he then reduced his speed to a very slow rate and when he entered the water no spray arose therefrom to obscure his vision; that while he was proceeding through the water at a moderate speed, with truck under control, defendant's bus entered said stretch of water at its southern end at a rapid and dangerous rate of speed, causing spray to be thrown upon the windshield and the driver's vision to be obscured; that the driver lost control of the bus and turned it from its right or proper side of the highway into and upon the truck's lane of travel, and that: "* * * fearing that a collision was inevitable and in the emergency created solely and only by the fault and negligence of Nolan Ellerbe, John David Solomon attempted to avoid the path of said bus, but was unable to do so and a collision occurred, as a result of which David Solomon received injuries, from which he died on November 23, 1938."
Plaintiffs further allege that said collision and its results may be solely accredited to the fault, negligence and carelessness of defendant's operator in these particulars, to-wit:
Entering upon a stretch of road completely covered by water at a dangerous and reckless rate of speed; failing to keep a proper lookout and to have the bus under proper control; turning on to the wrong or left side of the highway; and, generally, operating the bus in such manner and under such conditions as to violate the rules of the road and imperil the safety of others using said highway.
Defendants deny that the collision is attributable to any extent to any act of negligence or carelessness of the bus operator, but, on the contrary, aver that he was free of fault and negligence in connection therewith. They also aver that the bus entered the water at a slow rate of speed and had traversed the greater part of the distance inundated, holding to its side of the concrete slab, when the Solomon truck approached from the opposite direction at the reckless speed of approximately fifty miles per hour, and:
"That the aforedescribed accident was the direct and proximate cause of the gross carelessness and negligence on the part of John David Solomon in driving at an excessive and careless rate of speed under the circumstances and in not paying attention to the highway along which he was traveling and in driving with an utter disregard for the safety of others and Nolan Ellerbe in particular."
And, in the alternative: "* * * that David Solomon, deceased, was contributorily negligent in failing to keep a proper lookout of the highway along which he was traveling and in failing to object to the careless and negligent manner in which his son was operating the truck in which they were riding."
The defense is additionally urged in the alternative, that the deceased and his son were on a joint venture when the accident occurred and that the negligence of the son is for that reason imputable to the father. Plaintiffs' demands were rejected and they appealed.
The lower court gave lengthy written reasons for judgment. It held that the bus entered the water before the truck did and that plaintiffs failed to make out their case in that the alleged negligence of the bus operator was not proven.
The highway at the locus of the accident consists of a concrete slab eighteen feet wide with shoulders on each side four feet wide and parallel ditches. The water was so muddy that the medial black line bisecting the slab could not be seen by the drivers. There were no stakes or markers to indicate the delineation of the slab. The collision occurred about fifty yards south of the northern limit of the water. Therefore, the bus had covered approximately one hundred fifty yards of the flooded section and the truck fifty yards thereof when the accident happened. These facts alone indicate rather forcefully that the bus entered the water first. If it did not do so, it would have had to travel three times as fast as did the truck to reach the point of collision when it did, assuming that both vehicles entered the water simultaneously. Nolan Ellerbe, the bus operator, says that he entered the water first. Mr. Zeb York, two hundred yards away, the only eye witness to the collision save the drivers and the deceased, while not interrogated specifically on the point, inferentially corroborates Ellerbe's testimony. We concur in the ruling of the trial judge on this point.
Ellerbe testified that he entered the water at a speed of approximately thirty miles per hour and fearing that his motor would "drown out" reduced the speed to twenty miles per hour, at which he was *Page 818 
going when the accident happened; that when the truck entered the water, spray arose and went upon its hood and windshield and the driver began to pull the vehicle over on its left side of the highway; that he (Ellerbe) then gradually drove the bus to its right side until both right wheels were on the shoulder; that when the truck had traveled about thirty-five yards in the water "he just pulled directly in the path of my bus. I hit him and went on in the ditch." If this is true, the truck was only fifteen yards from the bus when it began to encroach upon the bus' side of the highway.
Ellerbe admits that he did not sound the bus' horn to warn Solomon of the emergent situation he was creating. He is uncertain whether he encroached upon the left side of the road before observing the truck on his side thereof, but is certain that at the time of the collision and for a considerable distance south thereof the bus was well on its side of the highway with right wheels on the shoulders.
Young Solomon testified that he was driving fifteen miles per hour when he observed the water-covered section of the road and then slowed down to ten miles per hour as he entered the water and had proceeded twenty-five or thirty feet when:
"* * * I saw the bus coming at a high rate of speed, and the water flashed over his windshield and up against his cab, and when that water settled he was over on my side of the road, and he kept coming on my side of the road and I cut over to his side of the road to go by and about that time he saw me cut back over to his side of the road and he cut back too, and that is the way it happened."
He added that he was not over thirty-five feet from the bus when he first cut his truck to his left side and that the bus was then on his side of the highway. He says he was driving about eight or ten miles per hour, adding:
"You could not hardly go fast because there was so much water there. If you went fifteen miles per hour, it would have been all over the cab."
He also testified that the bus prior to the accident had traveled in the water only the distance from where he was sitting in the court room to the rear thereof, perhaps, not over fifty feet. In this estimate he is wofully mistaken. He did not sound the horn nor otherwise give signal to the bus after observing it on his side of the road.
Therefore, as aptly said by the trial judge, the testimony of the two drivers is so diametrically at variance in material respects as to render reconciliation impossible. They are, however, in substantial accord in one material respect and that is as to the distance between the vehicles when the truck undertook to get on the bus' side of the road. Solomon says this distance was about thirty-five feet and Ellerbe says it was approximately forty-five feet.
The accident actually occurred on the bus' proper side of the road. The right front fender and wheel of the truck struck the left front portion of the bus. The bus' course was deflected toward the east. It left the pavement at an angle of about forty-five degrees and rested with its front end at the edge of the ditch. The truck's position on the pavement was practically reversed. It rested near the center of the road, facing northeasterly also.
Plaintiff argues at length that there was evidence that the rear tires of the bus impressed marks on the pavement on the truck's side of the road at the locus of the accident. The lower court rejected this contention. We have carefully read the testimony bearing on the question and have reached the same conclusion thereon as did the trial judge.
One witness, arriving after the bus had been pulled back upon the road and removed, testified that he saw tire marks on the west side of the pavement, but this was after the wrecker had been on the scene and had removed the bus, and other cars had passed. Witnesses who viewed the locus prior to the bus' removal, saw no such evidence. These include a traffic officer whose duty it was to closely scrutinize the situs for evidence as to how the collision occurred.
The books are full of cases arising from collisions of motor vehicles attributable in whole or part to abnormal atmospheric or weather conditions, but our research has not revealed a single case in which a collision occurred while both vehicles were traveling at moderate speed in shallow water and, too, in broad daylight. The present case, it would seem, is sui generis. No citation of authority is needed to prove the soundness of the proposition that it was negligence and carelessness of the grossest sort for the Solomon truck to have undertaken to cross the water at the time it did and under circumstances then prevailing. If it was negligence to enter the *Page 819 
water, it was equally so to continue to drive therein. The rule applicable to the facts is not unlike that concerning the preemption of intersections.
We have devoted much more time to a study of the record in this case than is usually required in tort actions, and turn therefrom in a state of indecision as to why the collision occurred. The fact that the impact occurred while both vehicles were on the bus' side of the road when the truck was endeavoring to pass to the right side of the bus, is highly important. This admitted fact certainly, to a material degree, weighs favorably for defendants and to the same degree unfavorably for plaintiffs. It being admitted by plaintiffs that the veering of the truck to its left side caused the collision on the bus' side of the road, carries with it the burden of satisfactorily accounting for the shift in the truck's position. We are confident in the conclusion that plaintiffs have not met nor discharged this burden. We are also clear in the opinion that neither the rate of speed nor the alleged tossing of spray contributed to the collision. The lower court, in its endeavor to determine why Solomon drove his truck on to the bus' side of the road offers the following reason, which is about as plausible as any we can conceive, to-wit:
"* * * An examination of the photograph of that portion of the highway, described as covered by water and introduced in the evidence, further strengthen the court in the conclusion that the driver of the plaintiff truck was confident, in his convictions, that the on coming bus was on his side of the road, but that he was an unfortunate victim of an error of vision, most likely to have happened to anyone not thoroughly familiar with this section of the road. An examination of this section of the road discloses a sag or curve to the west. This curvature would not be visible to one, when it is covered by water, and unless allowed for, a car or vehicle approaching in proper position from the south would have every appearance of being on the left or wrong side of the road."
Plaintiffs seriously argue that even though the accident happened in the manner contended by defendants, the bus operator had the last clear chance to avert the accident by stopping the bus or sounding the horn to apprise the truck's driver of the impending danger. We do not think this doctrine applicable to the facts of this case. The vehicles were not over forty-five feet apart when the truck undertook to get on its left side of the road. The combined speed of the vehicles was not less than thirty miles per hour or forty-four feet per second. The bus driver had only one second within which to do anything to avert a collision. Mental and physical powers do not coordinate so quickly. And, in addition, the perilous situation was as observable to the occupants of the truck as it was to the bus' operator, yet they did nothing to prevent the accident, but on the contrary, persisted actively in the course that made it inevitable.
It is urged that as between the versions of the accident given by young Solomon and Ellerbe, the former's should be accepted, since there are some contradictions in Ellerbe's testimony. We do not think we would be warranted in rejecting Ellerbe's testimony for the reason assigned. He no longer works for the bus company. The record does not disclose that he is to any extent interested in the outcome of this suit. On the other hand, young Solomon is materially interested in the final disposition of the case; and his own testimony is not free from criticism. He is positive he preceded the bus into the water. This is not true. We do not see how he could have been honestly mistaken on the point. The probity of these two witnesses, so far as we are able to discern, is about equal. This being true, and there being no material circumstances nor evidence in the case to unbalance the scales, we have to conclude as did the lower court, that plaintiffs failed to make out their case.
Should it be held that Ellerbe was negligent and that this negligence contributed proximately to the accident, as did young Solomon's, we would be impelled to further hold that the deceased would have been barred from recovery because of the contribution he made to the accident. Young Solomon admits that his father called his attention to the bus' position on their side of the road, and added:
"The best way is to try and go around the other side."
The suggestion was followed, and then the collision occurred.
Ordinarily, it is a highly hazardous undertaking for one motor car to attempt to pass in front of another moving car, unless the distance between the two and other conditions clearly warrant the undertaking; and to attempt to do so when the roadway *Page 820 
is completely submerged, the medial line obscured, with no markers to guide traffic, and other conditions being as they appear in this case, assuredly should be denominated as negligence of the rankest sort. Every circumstance and condition argued for retention by each vehicle of its side of the road.
The judgment appealed from is affirmed.